UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICKEY BRIGHT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2782** |
| **MARLIN GUSMAN, SHERIFF, SPECIAL INVESTIGATION DEPARTMENT (SID), TIER DEPUTIES (MANY OF THEM) UNKWN. NAMES** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

### I.     Factual Summary

####     A.     The Complaint

The plaintiff, Rickey Bright ("Bright"), is presently housed in the House of Detention ("HOD") within the Orleans Parish Prison system ("OPP"). Bright filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, unidentified tier deputies, and the Special Investigation Department of the Orleans

Parish Sheriff's Office ("SID") seeking damages as a result of the conditions in OPP after Hurricane Katrina.

He alleges that he was housed on the fourth floor of the HOD on August 29, 2005. He alleges that water began to rise out of the toilets and floor drains. He claims that he called for help but his calls were ignored, although he was told someone was coming to get him. He claims that he and other inmates remained with sewerage water on the floor from about 4:00 p.m. on August 29, 2005 to 1:00 p.m. on September 1, 2005.

At that time, he was taken by SID officers to the roof of the jail building. He was then taken by boat to a bridge. He claims that he remained on the bridge from around 5:00 p.m. to 7:00 p.m. He was then put on a bus and given water and a peanut butter sandwich. He was taken to Allen Correctional Center, where he was given a bath, food, clothing and a clean bed.

Bright complains that, before he was moved, the tier deputies left him in the jail with no food, clean water, security, medical attention, or clean clothes. He claims that, while he was told that help was coming, the deputies had left to attend to their own families. He further claims that the deputies used the supplies to care for their families, who were being sheltered in the jail.

He complains that the delay of the sheriff and his agents caused him great hardship, they disregarded and denied him liberty and his constitutional rights protected by the U.S. and Louisiana Constitutions were violated. He request monetary damages and a jury trial.

He alleges that they called out for the tier deputies to help them as the water was rising and requested removal to a safe place. However, hours past and they remained in the jail the next day. He alleges that he continued to call for help but was ignored by the tier deputies and the water continued to rise 4:00 p.m. August 29, 2005 to  ashore in the New Orleans area.

He alleges that he remained on the fifth flour about 4:00 p.m. August 29, 2005. He alleges that the facility smelled really bad, was unsanitary and they continued to call for help but know one came. He alleges that the officers left him with no food, no security, no medical attention or treatment and no clean drinking water and no clean clothing. He alleges that the prison staff abandoned their post and went to check on their families.

He alleges that he was finally transported to Allen Correctional Center. He alleges that they then brought them to the police parking garage and then to a boat which transported them to a bridge where they sat for hours and was given one cup of water and a sandwich. He complains that the delay by the sheriff and his deputies caused him great hardship, disregarded and denied him liberty, and violated his rights under the U.S. and Louisiana Constitutions.

In an addendum to the complaint, Bright alleges that he suffered physical injury as a result of the conditions of the jail which consisted of nausea and vomiting caused by the awful smell and taste of raw sewerage and water that covered the prison facility. He request that the court recognize that his vomiting was an unpleasant experience. He alleges therefore that he should be allowed to recover damages for the emotional and psychological aspect of his experience.

Bright further claims that he suffered deliberate indifference to medical needs, was denied food, and made to sit in the heat, all in violation of the Eighth Amendment to the United States Constitution. He also complains that the delay of emergency help evidenced the intentional denial or concern for the inmates. He therefore seeks damages and a trial by jury.

## II.   **Standard of Review**

Title 28 U.S.C. §§ 1915(e)(2), 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination

that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### III.  Analysis

#### A.  Claims Against Sheriff Gusman and Unidentified Tier Guards

Bright complains that the evacuation process at OPP during Hurricane Katrina was not timely and was negligently performed, which caused him to suffer without food, medical attention, and water for a couple of days.  He further alleges that he was required to live in raw sewerage and suffered nausea as a result.  He contends that this was more than a *de minimis* physical injury

suffered as a result of the deliberate indifference of the deputies. Bright, therefore, contends that the manner and timing of the evacuation constituted cruel and unusual punishment.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Bright alleges that some of the unidentified prison guards left the inmates in the facility. He does not identify these guards and therefore has not properly named them as defendants.

Nevertheless, Sheriff Gusman can not be held liable under § 1983 for the actions or neglect of the deputies under his employ.

Furthermore, Bright has not alleged that Sheriff Gusman was personally involved in the occurrences at the prison or in the evacuation process itself. Bright has not alleged that Sheriff Gusman was personally involved in the denial of food, water or medical care before or during the evacuation. Without some showing of personal involvement, the claim against the Sheriff should be dismissed.

Furthermore, to the extent Bright claims that Sheriff Gusman acted negligently in responding to or preparing for this emergency situation, his claims are still frivolous. Acts of negligence do not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986). Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

An official, whether the Sheriff of the unidentified tier guards, must act with deliberate indifference to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

In addition, Bright has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights. In order to prove that the conditions of his confinement violated the Fourteenth Amendment, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living". *Farmer*, 511 U.S. at 834. An episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs. *Hare*, 74 F.3d at 633.

Bright alleges that he was required to sit in the jail for several days before being evacuated on September 1, 2005. He complains that during that period he had no food, he lived in unsanitary conditions, and was left with no assistance from the guards. Even if Bright could establish that the alleged neglect amounted to some intentional failure on the part of the guards at the prison, he could only proceed under § 1983 if he could show that he sustained a physical injury as a result of his exposure to these temporary conditions.

The only discomfort alleged by Bright is that he was nauseous after having lived in the smell of sewerage, had only contaminated water, and was not provided any food during that period. However, Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury))).

In *Alexander*, the Fifth Circuit held that vomiting and nausea were *de minimis* injuries and were therefore insufficient for recovery under § 1997e(e)). *Alexander*, 351 F.3d at 631. This same type of injuries have been alleged by Bright. Therefore, Bright's claims against the Sheriff and the unidentified deputies seeking recovery for his nausea should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted under Title 28 U.S.C.§ 1915e(2) and Title 42 U.S.C. § 1997(e)(1).

### B.   Claims against the Special Investigation Department

Bright has named the Special Investigation Department within the Orleans Parish Criminal Sheriff's Office as a defendant. Bright has not alleged any action or inaction by any specific or identifiable member of this unit. He claims only that members of this unit took him out of the smelly, hot jail to the roof as part of the rescue operation.

Nevertheless, in accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether the SID unit, as a part of the Orleans Parish Criminal Sheriff's Office can be sued.[1]   Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. In Louisiana, however, Parish Sheriff's Offices are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988).

The State of Louisiana grants no such legal status to any Parish Sheriff's Office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So.2d 236 (La. App. 3d Cir.), *writ refused*, 352 So.2d 235 (La. 1977). Thus, the SID unit within the Orleans Parish Criminal Sheriff's Office is not a juridical person capable of being sued under § 1983. The claims against this entity are frivolous and otherwise fail to state a claim for which relief can be granted.

### C.     Claims under the Louisiana Constitution

Bright contends that the actions of the Sheriff and the unidentified tier officers violated his state constitutional rights which also forbid cruel and unusual punishment and otherwise acted negligently in abandoning the jail and delaying evacuation. He brings these claims under Louisiana state law. Under a broad reading, Bright appears to bring these claims pursuant to Section 20 of the Louisiana State Constitution which provides that no law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Also, La. Civ. Code art. 2315 *et seq.* provides that a person is liable for any act whatsoever which causes injury to another.

---

[1] Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  *See* FED. R. CIV. P. 17(b).

The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). The court is recommending dismissal of Bright's federal claims in their entirety as frivolous and/or for failure to state a claim for which relief can be granted. Therefore, his state law claims should be dismissed without prejudice because the Court declines to exercise its supplemental jurisdiction where there are no remaining federal claims.

**IV.   Recommendation**

It is therefore **RECOMMENDED** that Rickey Bright's Title 42 U.S.C. § 1983 against Sheriff Gusman, the unidentified deputies, and the Special Investigation Department be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Bright's claims brought pursuant to Louisiana law should be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_\_16th\_\_\_ day of _____October_____, 2006.

                                              **KAREN WELLS ROBY**
                                    **UNITED STATES MAGISTRATE JUDGE**